IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETS AMERICA, INC., | } | |
| Plaintiff, | } | |
| v. | } | Case No.: CV 02-P-0015-S |
| THE IAMS COMPANY, et al., | } | |
| Defendants. | } | |

### MEMORANDUM OPINION

Pending before the court are Defendants' Motion for Summary Judgment and Evidentiary Submissions in Support Thereof (Doc. #12) filed on August 1, 2002, Defendants' Motion to Strike (Doc. #26) filed on November 25, 2002, and Supplement to Defendants' Motion for Summary Judgment (Doc. #34) filed on November 19, 2003. The court has reviewed Plaintiff's filings in opposition to these motions (Docs. #16, 25, 32, 36), Defendants' filings in support of these motions (Docs. #13, 18, 19, 27, 35), as well as heard oral argument from the parties on October 28, 2003, and finds the Supplement to Defendants' Motion for Summary Judgment is due to be granted, and Defendants' Motion for Summary Judgment is due to be granted in part and denied in part. Because the court does not rely upon the affidavit of Dale Peterson in reaching its decision, Defendants' Motion to Strike is moot.

**I.    Introduction and Procedural History**

Plaintiff Pets America, Inc. ("Pets") filed this lawsuit on December 4, 2001, in the Circuit Court of Jefferson County and included claims for breach of contract and fraud. (Doc. #7). On January 3, 2002, Defendants, The Iams Company ("Iams") and Patrick McGrath ("Mr. McGrath"), removed the case to this court. (Doc. #1). Pets amended its complaint on January 8, 2002, to

include a claim for promissory estoppel. (Doc. #8). At the conclusion of discovery, Defendants moved for summary judgment.

The three issues presented on summary judgment are: 1) whether sufficient evidence of an enforceable contract between Pets and Iams exists; 2) whether sufficient evidence that Iams and Mr. McGrath defrauded Pets exists; and 3) whether sufficient evidence to support a promissory estoppel claim against Iams exists.

**II.   Facts**

This lawsuit had its beginning in March 2001 at a pet industry trade show, in which Martha Shaffer, the Director of Sales for Iams, discussed with Dale Peterson, CEO and President of Pets, the idea of Iams' co-sponsoring a mini-store venture that Pets was contemplating. (Doc. #25 at Ex. A at 4). Subsequent to the pet industry trade show, Mr. McGrath became the contact person for Iams, and he and Mr. Peterson engaged in business negotiations.

On April 26, 2001, Mr. McGrath wrote Mr. Peterson in order to "clarify the common ground that will allow The Iams Company - East Area to committ [*sic*] to the Pets America 'mini store' concept." In that correspondence, Mr. McGrath made the following statements:

> Two weeks prior to each store's opening a payment of $12,500 will be made for [certain] items [listed in the correspondence.] . . . Ninety days from the first check, a payment of $7,500 will be made . . . ."
>
> I would expect this "partnership" to continue, for **ALL** Pets America stores as long as Pets America is:
>
> - managed centrally
> - makes prompt payment in accordance with terms set by distributor(s)
> - maintains exclusive commitment to two dog and cat food manufacturers with equal recommendation and presence
>
> Please understand that we will want to assess the terms of this agreement on a store by store basis. As discussed, any investment on our behalf is based on the expectation that this 'mini store' concept will produce a viable chain in excess of 20

> locations by the 3rd year each averaging $50,000 dollars in Eukanuba and Iams products.
>
> Again, I eagerly await your decision on The Iams Company's participation in Pets America's future.

(Doc. #25, Ex. E) (emphasis in original). On April 27, 2001, Mr. Peterson wrote back to Mr. McGrath, indicated that he had reviewed his April 26th e-mail "where [McGrath] outline[d] specific terms for funding the Pets America mini store project," and stated "I find them acceptable." (Doc. #25, Ex. F.).

In addition to the language quoted above, both letters contain more language which is ambiguous. Suffice it to say that Mr. McGrath and Mr. Peterson could have benefitted from a review of their correspondence by their respective worthy counsel but, unfortunately, no such review was sought.

Notwithstanding the ambiguities in the preceding correspondence, on July 12, 2001, Iams paid Pets an installment payment of $12,500.00 for the first mini-store. (Doc. #25 at Ex. A at 7). A second installment payment of $7,500.00 by Iams to Pets followed in September. *Id.* On September 12, 2001, Mr. McGrath wrote Mr. Peterson and stated, "[P]lease allow this letter to supercede my 4/26 memo in outlining our support for the Pets America 'mini-store' test concept." (Doc. #25, Ex. G). The letter referenced "the limited learnings from the first store test and our discussion from our 9/7 conference call in the area of operations, communication, grand opening support, and ongoing annual marketing support: . . . . " Among other things, the September 12, 2001, letter indicated that Iams could "commit $5,000 for store #2 due in full 30 days after opening." The correspondence also restated Pets' purported understanding "that Iams continued commitment will be assessed on a store by store basis". Iams did not fund any other Pets' locations. (Doc. #25 at Ex. A at 7).

3

**III.   Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the record shows that "there is no genuine as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. In deciding a summary judgment motion, the court must review the record in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citation omitted). To establish a breach of contract claim, Pets must show evidence of a contract, performance on its part, nonperformance on the part of Iams, and resulting damages. *See Ex parte Steadman*, 812 So. 2d 290, 293 (Ala. 2001).

**IV.   Discussion**

While Iams maintains that the parties had no meeting of the minds with respect to the mini-store concept (and thus the absence of the first prima facie element for a contract claim), the court agrees with Plaintiff that a reasonable fact-finder could conclude that the proposed agreement that Mr. McGrath sent to Mr. Peterson on April 26, 2001, was the offer, and that on April 27, 2001, Mr. Peterson accepted the terms of this proposal. The $20,000.00 payment by Iams to Pets with respect to the first store bolsters Plaintiff's argument that this case presents material issues of disputed facts because a jury could find it highly improbable that Iams would have made such a payment without believing that some type of mutual understanding had been reached between the companies. Moreover, the mere fact that ambiguity exists with respect to some of the language used by Mr. McGrath and Mr. Peterson in their exchange of correspondence, does not, as a matter of law, render the contract invalid. Instead, this ambiguity requires a jury to decide 1) whether there was an enforceable agreement; 2) if so, what were its terms; 3) was there a breach of it; and 4) any applicable damages. Therefore, because material factual disputes exist and Iams is not entitled to judgment as a matter of law, summary judgment is due to denied as to Count I of Plaintiff's amended

complaint.

As for Pets' promissory estoppel claim, Defendants correctly point out that "the principle of promissory . . . estoppel cannot be utilized to create primary contractual liability where none would otherwise exist." *Bates v. Jim Walter Resources, Inc.*, 418 So. 2d 903, 905 (Ala. 1982). However, as discussed above, material factual disputes exist as to whether a valid contract existed between Pets and Iams. Similarly, material factual disputes exist as to whether Pets can recover from Iams under a theory of promissory estoppel, which requires evidence of "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character . . . and which does induce such action or forbearance." *Bush v. Bush*, 177 So. 2d 568, 578 (Ala. 1994). There is sufficient Rule 56 evidence that Pets proceeded with building two stores pursuant to the parties' mini-store concept so action was taken by Pets.[1] (Doc. #25 at Ex. A at 7).

Conversely, Pets' fraud claim is promissory in nature and cannot survive summary judgment. Under Alabama law promissory fraud requires evidence of the following additional elements: "(1) the promisor at the time of the alleged misrepresentation, did not intend to do the act promised; and (2) that the promisor, at that time, had an intent to deceive." *E.g., General Motors Acceptance Corp. v. Covington*, 586 So. 2d 178, 181 (Ala. 1991). Accordingly, such claims are generally more difficult to prove than other types of fraud claims. There is simply insufficient evidence in this record that, at the time a purported deal was struck, Iams did not intend to perform as promised, nor is there substantial evidence of any then present intent to deceive on the part of Iams and Mr. McGrath. Therefore, Pets' promissory fraud claim necessarily fails. The mere failure of a party to perform cannot satisfy these two additional elements. *See Hinkle v. Cargill, Inc.*, 613 So. 2d 1216,

---

[1] Moreover, the court agrees with Pets that a close examination of the Eleventh Circuit Court of Appeals decision in *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003) actually supports the viability of Plaintiff's promissory estoppel claim. The court is mindful that *Iraola* applied Georgia law.

1220 (Ala. 1991). Moreover, it is undisputed that Iams did perform, at least in part, by funding the first store.

For the reasons stated above, Pets cannot maintain a promissory fraud claim against Iams, and Iams is entitled to summary judgment on Count II of Plaintiff's amended complaint. The remaining counts, Counts I and III of the amended complaint, will be submitted to a jury, however, because each turns on disputed issues of material fact. A separate order will be entered contemporaneously herewith.

**DONE** and **ORDERED** this _9th_ day of December, 2003.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE